## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO. 04-cv-10291-RWZ

JOHN F. RICHARDS,

      Plaintiff,

v.

MASSACHUSETTS DEPARTMENT
OF CORRECTION, ET AL.,

      Defendants.

## DEFENDANT DEPARTMENT OF CORRECTION, DENNEHY AND MICI'S MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS AND/OR MOTION FOR SUMMARY JUDGMENT

Now come defendants Department of Correction, Dennehy and Mici, and hereby respectfully submit this Memorandum in Support of their Motion to Dismiss and/or Motion for Summary Judgment.

## STATEMENT OF FACTS

Plaintiff John F. Richards is a pro se inmate lawfully in the custody of the Department of Correction ("DOC") and is presently incarcerated at MCI Shirley, in Shirley, Massachusetts. The defendants include the Commonwealth of Massachusetts, Department of Correction, Commissioner of Correction Kathleen Dennehy and Carol Mici, Acting Superintendent of MCI Shirley.[1] He is suing each defendant in her official and individual capacity.

In his Complaint, plaintiff alleges that he has been injured since June of 2002, and that he has not been provided with adequate medical treatment for his injuries. He states

---

[1] Defendants "UMass Correctional Medical Services," Massachusetts Board of Registration, M.L. Angeles, Khalid Mohamed, Dr. Childs, Asma Ahmed and Jane Doe are not represented by the undersigned counsel

that he "is not seeking money damages against the defendants listed in this action, however the Court needs to step in and help the plaintiff and order an independent investigation into the plaintiff's allegations." (Complaint, paragraph 18). Plaintiff claims that this Court has "jurisdiction over this matter pursuant to 42 USC Section 1983 and pursuant to civil rights violations under the 8th ans [sic] 14th Amendments to the Constitution of the United States, its cruel and unusual punishment and in retaliation for previous complaints of conditions and confinement." (Complaint, paragraph 12).

The Complaint contains broad and conclusory allegations about all defendants, and fails to include specific allegations as to defendants Department of Correction, Dennehy and Mici. For the following reasons, plaintiff's Complaint must be dismissed.

## STATEMENT OF UNDISPUTED FACTS

1. Plaintiff has been incarcerated at MCI Shirley since approximately 2002. Complaint, page 1.

2. Commissioner Dennehy became Acting Commissioner of Correction on December 1, 2003 and Commissioner on March 16, 2004.

3. Carol Mici became Acting Superintendent of MCI Shirley on February 1, 2004.

4. Plaintiff filed the instant case on February 11, 2004.

5. From January 1, 2003 to the present, the University of Massachusetts Medical School ("UMMS") has been the Department of Correction's health services contractor. Affidavit of Susan Martin, attached as Exhibit 1, paragraph 3.

6. From July 1, 1994 until December 31, 2002, Correctional Medical Services ("CMS") was the Department's health services contractor. Martin Affidavit, paragraph 2.

7.     Department of Correction employees do not have direction or control over the independent medical contractors and the manner in which medical professional determine the appropriate medical treatment for prisoners. Rather, all decisions with respect to type and timing of medical care provided to prisoners are solely within the province of medical professionals. <u>Martin Affidavit</u>, paragraphs 5 and 6.

8.     On February 26, 2004, Acting Superintendent Mici received a complaint letter from plaintiff, dated February 18, 2004, which had been forwarded to her by Commissioner Dennehy. In the letter, plaintiff alleged, among other things, that he was having a problem with the staff at Shirley and is being retaliated against for a complaint he filed in Superior Court. He also complained about his access to a law class. <u>See</u> Ruel Memo, Exhibit 2.

9.     Following the receipt of this letter by defendant Mici, MCI Shirley Special Investigator Michael Ruel looked into plaintiff's complaints. <u>Id</u>.

10.     Plaintiff told Investigator Ruel that he was not in fear for his safety from security staff. Plaintiff also signed a waiver to remain in general population at Shirley, indicating he was not in fear for his safety. <u>Id</u>.

11.     In addition, when plaintiff was interviewed by MCI Shirley Special Investigator Michael Ruel on February 27, 2004, he told the investigator that "he appreciated the assistance in getting seen by Health Services personnel. Inmate stated all complaints he had forwarded to Acting Commissioner Kathleen Dennehy would be retracted. Inmate Richards indicated all his complaints have been addressed and resolved." <u>Ruel Memo</u>, attached as Exhibit 2.

12.    In response to a letter from plaintiff, dated February 18, 2004, Commissioner

Dennehy directed Assistant Deputy Commissioner John Marshall to look into his

allegations.  Commissioner Dennehy responded to plaintiff in a letter dated March

15, 2004, attached hereto as Exhibit 3.

13.    Plaintiff wrote a letter to Commissioner Dennehy dated March 3, 2004, in which

he complained about not receiving Sudafed.  He wrote a March 30, 2004, letter to

the Commissioner regarding treatment for increased back pain, among other

things.  Both letters were referred by Commissioner Dennehy to Department of

Correction Director of Health Services, Susan Martin.  Martin Affidavit, Exhibit

1D.

14.    Upon receipt of the aforesaid letters, the Director of Health Services contacted the

contractual medical provider who reported to her that plaintiff had been seen by

various medical professions, including nurse practitioners, and physicians since

1997 for complaints of back pain.   She was also informed that plaintiff had been

prescribed various medications to alleviate the pain.  Id.

15.    Specifically, plaintiff was treated by medical staff and referred to a physical

therapist in December of 2002, was seen by a physical therapist in January of

2003, and was seen in February 2004 for complaints of additional radiating pain.

Id.

16.    Plaintiff had a follow-up appointment on March 3, 2004.  Kathleen Dennehy

letter, attached as Exhibit 3.

17.    In a letter to plaintiff, dated April 7, 2004, Ms. Martin explained that if plaintiff

continued to feel that his healthcare needs were not being addressed, it would be

4

most appropriate for him to bring his concerns to the contractual medical provider via their clinical complaint procedure. She also explained that plaintiff could request to see the Health Services Administrator at management access time. Id.

18. Plaintiff was seen by a nurse practitioner in August 2003 for an asthma condition. Michael Ruel Memo, attached as Exhibit 2.

19. Plaintiff received an MRI in April of 2004. Martin affidavit, paragraph 10.

20. The Department of Correction grievance policy, 103 CMR 491.08, states that, "medical or clinical decisions related to an inmate's physical or mental condition shall not be grievable under 103 CMR 491.00 as the medical contractor is required to maintain its own grievance procedure, however, matters concerning access to medical or mental health care are grievable." See 103 CMR 491, attached as Exhibit 4.

21. Plaintiff did not file a grievance regarding any alleged wrongdoing by Commissioner Dennehy or Acting Superintendent Mici with respect to his access to medical treatment. Stephen Lipka Affidavit, attached hereto as Exhibit 5.

## ARGUMENT

### I.    THE DEPARTMENT IS NOT A "PERSON" WITHIN THE MEANING OF 42 U.S.C. § 1983.

Plaintiff appears to allege that the Department violated and allowed others to violate 42 U.S.C. § 1983. It is well-established law that a state and its agencies are not "persons" within the meaning of 42 U.S.C. §1983. Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989); Pennhurst State School and Hosp. v. Halderman, 465 U.S. 89, 100 (1984); Woodbridge v. Worcester State Hosp., 384 Mass. 38, 44-45 n.7 (1981).

5

Accordingly, since Section 1983 is not available against the Department, to the extent it is being treated as a defendant, and that plaintiff seeks relief under Section 1983, his Complaint must be dismissed.

## II.    PLAINTIFF FAILS TO STATE A CLAIM UNDER THE EIGHTH AMENDMENT AGAINST COMMISSIONER DENNEHY OR SUPERINTENDENT MICI.

Plaintiff's Complaint contains broad, conclusory allegations about all named defendants.  Plaintiff has failed to plead sufficient facts and allegations against Commissioner Dennehy or Superintendent Mici so as to support <u>any</u> causes of action against them.  Accordingly, to the extent that plaintiff's Complaint raises a claim under the Eighth Amendment, that claim must fail.   In addition, plaintiff cannot bring a 42 USC Section 1983 claim against Commissioner Dennehy or Superintendent Mici in their official capacities.  <u>Will v. Michigan Dept. of State Police</u>, 491 U.S. 58, 66 (1989).

The Eighth Amendment protects prisoners from punishments which "involve unnecessary and wanton infliction of pain... totally without penological justification." <u>Gregg v. Georgia,</u>, 428 U.S. 153, 173 (1976).  Prison officials and doctors may violate the Eighth Amendment if they exhibit "deliberate indifference to serious medical needs." <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976).  In order to succeed on a claim of cruel and unusual punishment, the plaintiff must satisfy both an objective and a subjective component.  First, in order to demonstrate that the medical care violated constitutional mandates, a prisoner must show that his medical treatment "shocks the conscience" or "offends evolving standards of decency." <u>Id</u>. at 106;  <u>Watson v. Caton</u>, 984 F.2d 537, 540 (1st Cir. 1993)(to succeed under the Eighth Amendment, an inmate must show that the denial of medical treatment was for the purpose of punishment or the result of "wanton"

decisions to deny or delay treatment).   In Whitley v. Albers, 475 U.S. 312, 319-21 (1986), the Supreme Court held:

> After incarceration, only the unnecessary and wanton infliction of pain ... constitutes cruel and unusual punishment forbidden by the Eighth Amendment. To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due care for the prisoner's interests or safety....It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring control over a tumultuous cell block.

Id. at 319. (emphasis in original).

The standard applied to prison officials in this Circuit is that inmates are to receive adequate medical care based on the exercise of professional judgment. United States v. DeCologero, 821 F.2d 39, 43 (1st Cir. 1987)(emphasis added).   See also Figueroa v. Vose, 874 F. Supp. 500, 507 (D.R.I. 1994); Dias v. Vose, 865 F. Supp. 53, 57 (D. Mass. 1994); DesRosiers v. Moran, 949 F.2d 15, 19-20 (1st Cir. 1991)(to succeed on a claim of inadequate medical treatment, a prisoner must show that his treatment was "so grossly inadequate as to constitute a knowing denial of proper medical care").  Further, "[i]n evaluating the quality of medical care in an institutional setting, courts must fairly weigh the practical constraints facing prison officials." Id. at 19, citing Wilson v. Seiter, 501 U.S. 294, 303 (1991). See also Bell v. Wolfish, 441 U.S. 520, 547 (1979)("prison administrators...should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security").

The Supreme Court has stated that, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of

medical mistreatment under the Eighth Amendment.   Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. at 106; Daniels v. Williams, 474 U.S. 327 (1986)(acts or omissions must constitute more than mere negligence, they must amount to a reckless or callous indifference to the constitutional rights of others).   In addition, an inmate's allegations which reflect a disagreement with the prison medical staff on the appropriate course of treatment do not state a constitutional violation, even if they present a colorable claim of negligence. See  Watson v. Caton, 984 F.2d at 540 ("The courts have consistently refused to create constitutional claims out of disagreements between prisoners and doctors about the proper course of a prisoner's medical treatment..."); Layne v. Vinzant, 657 F.2d 468, 474 (1st Cir. 1981)("Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments..."); Sires v. Berman, 834 F.2d 9, 13 (1st Cir. 1987); DesRosiers v. Moran, 949 F.2d at 20 ("a claim of inadequate medical care which reflects no more than a disagreement with prison officials about what constitutes appropriate treatment does not state a cognizable claim under the Eighth Amendment"); Jackson v. Fair, 846 F.2d 811, 817 (1st Cir. 1988);  White v. Farrier, 849 F.2d 322, 327 (8th Cir. 1988)("Physicians are entitled to exercise their professional judgment.")

The second requirement for the successful prosecution of a medical treatment claim under the Eighth Amendment demands that the prisoner prove that the defendants acted with a sufficiently culpable state of mind, that is, with deliberate indifference to a serious medical need. See Wilson v. Seiter, 501 U.S. at 299-300; Farmer v. Brennan, 511 U.S. 825, 837 (1994); Whitley v. Albers, 475 U.S. at 321; DesRosiers v. Moran, 949 F.2d

at 18-19.   To show deliberate indifference, the plaintiff must demonstrate, for example, interference, delaying, or denial of access to prescribed treatment, or medical care that is so grossly incompetent, inadequate or indifferent as to be intolerable to fundamental fairness. See Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986).   In other words, "deliberate indifference is conduct that offends evolving standards of decency in a civilized society." DesRosiers, 949 F.2d at 18 (citing Rhodes v. Chapman, 452 U.S. 337, 347 (1981).   "Put another way, deliberate indifference to serious medical needs amounts to the 'unneccesary and wanton infliction of pain." Estelle v. Gamble, 429 U.S. 97, 104-106 (1976).

If there is improper or inadequate medical care, it must be continuing, and must be of a nature not supported by any competent, recognized school of medical practice. Medcalf v. Kansas, 626 F.Supp. 1179, 1182 (D.Kan. 1986). Any indifference must be substantial to rise to the level of a constitutional violation, since prison authorities have wide discretion regarding the nature and extent of medical treatment. See Jones v. Smith, 784 F.2d 149, 151-152 (2d Cir. 1986); Bowring v. Godwin, 551 F.Supp. 44, 48 (4th Cir. 1977). Moreover, prison officials are entitled to rely upon the advice of medical professionals. Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995); McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977).

Therefore, in order to prevail on his claim under the Eighth Amendment, the plaintiff must show that: 1) he has been denied adequate treatment for a serious medical condition, and 2) that Commissioner Dennehy and Superintendent Mici were both aware of facts from which a inference could be drawn that the plaintiff faced a substantial risk of harm and drew the inference, and deliberately and wantonly failed to act to avert the substantial risk to plaintiff's health. See Farmer v. Brennan, 511 U.S. at 837. "While this

9

mental state can aptly be described as 'reckless,' it is recklessness not in the tort-law sense, but in the appreciably stricter criminal law sense, requiring actual knowledge of impending harm, easily preventable." DesRosiers, 949 F.2d at 19.    "Wantonness," not inadvertence or error, characterized the conduct actionable under the Eighth Amendment. Wilson v. Seiter, 501 U.S. 294, 302 (1991).

In the instant case, assuming arguendo that plaintiff's Complaint sets forth a "serious medical need," plaintiff has failed to establish that Commissioner Dennehy or Superintendent Mici were deliberately indifferent to that serious medical need. Plaintiff's Complaint admits that, "he has seen doctors, nurses, as well as physical therapist and nurse practitioners from [June 12, 2002] to the present." Complaint, paragraph 13. Moreover, his Complaint does not and cannot establish that these defendants have any direct involvement in the medical decisions made by UMMS which are the basis of his claim.    In addition, Commissioner Dennehy became Acting Commissioner on December 1, 2003.    Acting Superintendent Mici began her current position on February 1, 2004.

The undisputed facts make it clear that this is not a case where the defendants denied, delayed or interfered with the plaintiff's access to medical care. To the contrary, on March 15, 2004, Commissioner Dennehy personally responded to a letter from plaintiff, dated February 18, 2004 and explained the steps that had been taken to investigate plaintiff's allegations. Specifically, she explained that,

> [d]uring the course of the interview [with officers from the IPS team] you stated that you were fearful of medical staff at MCI-Shirley due to a lack of treatment and a false diagnosis and that you had no issue with staff harassment As a result, MCI-Shirley Administration had you meet with the physician on February 27, 2004. You were scheduled for a follow-up appointment on March 3, 2004. The physician will also schedule an appointment for you to be examined by a neurologist to determine the cause of your problem.

10

See Exhibit 3.

In addition, letters from plaintiff to Commissioner Dennehy, dated March 3 and

March 30, 2004, were referred to Department of Correction Director of Health Services,

Susan Martin. Upon receipt of plaintiff's letters, Ms. Martin had her staff contact UMMS

regarding his concerns about treatment for back problems. In her letter to plaintiff, dated

April 7, 2004, attached hereto as Exhibit 1D, Ms. Martin stated as follows:

> It was reported to me that you have been seen by various medical professionals,
> including nurses, nurse practitioners and physicians, since 1997 for complaints of
> back pain. Various medications were prescribed to alleviate the pain. In
> December 2002, the physician prescribed physical therapy. In January 2003, the
> physical therapist saw you. In February 2004, the physician saw you for
> complaints of additional, radiating pain. A neurology appointment was scheduled
> and an MRI was recommended. The MRI was done on April 2, 2004. When the
> physician reviews the MRI results, the next step in our treatment plan will be
> determined. It was reported that, in the meantime, you have a prescription for
> Tylenol #3 for pain relief.

Based on the foregoing responses to plaintiff, it is evident that he has been

receiving ongoing medical treatment for his various complaints. Although Mr. Richards

may disagree about the nature of the treatment and may be anxious to receive a diagnosis,

nothing in plaintiff's Complaint supports an argument that defendants were deliberately

indifferent to his medical needs. Accordingly, plaintiff's Complaint against the

Department of Correction, Commissioner Dennehy and Superintendent Mici must be

dismissed.

### III.    PLAINTIFF HAS NO CLAIM AGAINST THE COMMISSIONER, SUPERINTENDENT OR THE DEPARTMENT FOR UNTIMELY AND INADEQUATE MEDICAL CARE.

Plaintiff's Complaint appears to assert that he did not receive timely, adequate

medical care for his injuries. The Complaint alleges that the plaintiff has been trying

since June 2002 to get some type of medical treatment for his injuries," and states that

11

"defendants and their staff . . . have acted indifferent towards him for along [sic] time now."

To the extent that plaintiff alleges that the Department was negligent regarding the timeliness and adequacy of the medical care he received, plaintiff has no claim. The Massachusetts Appeals Court has determined that "the Commonwealth is not chargeable with the negligence of independent contractors which it employs." Thornton v. Commonwealth, 28 Mass. App. Ct. 511, 514 (1990). Beginning on July 1, 1994, the Department and CMS entered into a contract in which CMS agreed to provide the medical services to prisoners incarcerated in Department facilities. See Affidavit of Sue Martin, attached hereto as Exhibit "1". The contract between the Department and CMS provides, in pertinent part:

> The Provider shall be solely responsible for making all decisions with respect to the type, timing and level of Services needed by Inmates covered by the Program, including, without limitation, the determination of whether an Inmate is in need of clinic care, hospitalization, admission to a clinic, referral to an outside specialist or otherwise needs specialized care.

The Department contract with CMS is attached as Exhibit "B" of the Martin Affidavit. The contract between the Department and UMMS contains the identical language. See Exhibit C of Martin Affidavit.

Moreover, under similar circumstances, the Massachusetts courts have specifically held that medical providers at the Department are acting as independent medical contractors and therefore are not under the direction or control of the Department so that liability under G.L. c. 258 could attach. Gilchrist v. Commonwealth and EMSA, Suffolk Superior Court No. 95-4039-A at 3-4 (December 5, 1997) (Burnes, J.)

---

(Commonwealth not liable for alleged tortious injury caused by independent medical contractor); <u>Pantano v. Commonwealth of Massachusetts, et. al.</u>, Appeals Court No. 95-P-0487 (November 26, 1996) (neglect by independent medical contractor could not be ascribed to Department officers or the Commonwealth).

If plaintiff is claiming pain and suffering as a result of any alleged delay in receiving medical treatment or for inadequate medical treatment, the Department, Commissioner Dennehy and Acting Superintendent Mici are entitled to judgment in their favor, because CMS and UMMS are solely responsible for all decisions regarding the medical care of inmates. A suit cannot lie against the Department for the alleged negligence of its independent medical contractor UMMS or CMS, and its employees. Because all decisions governing the type, timing, and level of medical care are the sole responsibility of UMMS or CMS, any negligence claims relating to untimely or inadequate medical care against the Department must be dismissed.

## IV.   PLAINTIFF CANNOT PREDICATE SECTION 1983 LIABILITY ON A THEORY OF RESPONDEAT SUPERIOR.

It is clear that Commissioner Dennehy and Acting Superintendent Mici are both named in their supervisory capacities. Even construing this Complaint in the light most favorable to the plaintiff and its allegations taken as true, <u>Hughes v. Rowe</u>, 449 U.S. 5, 10 (1980); <u>Conley v. Gibson</u>, 355 U.S. 41, 45 (1957), the plaintiff has not and can not establish that Commissioner Dennehy or Acting Superintendent had any direct involvement in the medical decisions made by UMMS which are the basis of his claim.

Supervisory liability may not be predicated upon a theory of <u>respondeat superior</u>. <u>Monell v. Dept. of Social Services</u>, 436 U.S. 658, 690-92 (1978); <u>Gurtierrez-Rodriguez v. Cartagena</u>, 882 F.2d 553, 562 (1st Cir. 1989) (citations omitted). The First Circuit has

adopted a high standard for proving supervisory liability. In the absence of personal involvement, a supervisor will be liable for acts of a subordinate only if (1) the subordinate's behavior results in a constitutional violation and (2) the supervisor's action was "affirmatively linked" to the behavior in the sense that it could be characterized as supervisory encouragement, condonation or acquiescence or gross negligence amounting to deliberate indifference. Hegarty v. Somerset County, 53 F.3d 1367, 1379-1380 (1st Cir. 1995). Negligence is inadequate to establish supervisory liability. Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d 87 (1st Cir. 1994).

Rather, the plaintiff must show that the supervisor acted with deliberate indifference, in addition to a causation requirement linking the supervisor's conduct to the subordinate's violative conduct. Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 582 (1st Cir. 1994); Febus-Rodriguez v. Betancourt-Lebron, 14 F.3d at 92 (supervisor's acts or omissions must amount to the reckless or callous indifference to the constitutional rights of others; i.e., that it would be manifest to any reasonable official that his conduct was very likely to violate an individual's constitutional rights). Causation may be established by showing that the supervisor adopted or approved an unlawful policy or custom, Id.; Naughton v. Bevilacqua, 605 F.2d 586, 589 (1st Cir. 1979), or knew of, but failed to correct an ongoing wrongdoing. Layne v. Vinzant, 657 F.2d 468, 471 (1st Cir. 1981).

However, there is no supervisory liability where the alleged violations stem largely from sporadic incidents without the requisite personal involvement. Oklahoma City v. Tuttle, 471 U.S. 808, 823-24, 105 S.Ct. 2427, 3436-37, 85 L.Ed.2d 791 (1985); Rodriquez v. Furtado, 950 F.2d 805, 813 (1st Cir. 1991); Billings v. Commonwealth, 498

F.Supp. 883, 884 (D.Mass 1980). There must be either some participation or acquiescence by the supervising official in the alleged constitutional deprivation, <u>Delaney v. Dias</u>, 415 F.Supp. 1341, 1354 (D.Mass. 1976), or an "affirmative link" between the conduct of the supervisor and that of the employee. <u>Votour v. Vitale</u>, 761 F.2d 812, 880 (1st Cir. 1985), <u>cert. denied</u>, 106 S.Ct. 879 (1986)(in the absence of a pattern of past violence so striking to permit an inference of the supervisor's encouragement or approval of subordinates' actions, no liability, even though police chief knew of past complaints of brutality).

The plaintiff fails to allege <u>any</u> facts suggesting that defendants participated or acquiesced in any actual incidents, nor does he allege a pattern of behavior so striking as to permit an inference that they encouraged or approved of the alleged actions of their subordinates. On the contrary, in a letter to plaintiff from Commissioner Dennehy, dated March 15, 2004, attached hereto as Exhibit 3, the Commissioner explains that she ordered staff to look into plaintiff's allegations. In addition, following Acting Superintendent Mici's receipt of plaintiff's complaint from the Commissioner's office, MCI Shirley Special Investigator Michael Ruel interviewed plaintiff and others regarding plaintiff's complaints. <u>See</u> Exhibit 2. Accordingly, all 42 USC Section 1983 claims against Commissioner Dennehy and Acting Superintendent Mici must be dismissed.

## V.     PLAINTIFF FAILED TO EXHAUST HIS ADMINISTRATIVE REMEDIES.

Plaintiff must have first exhausted his administrative remedies <u>prior</u> to filing claims under 42 U.S.C. Sections 1983.   The Prisoner Litigation Reform Act ("PLRA") provides, in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a)(1996).

The PLRA mandates complete administrative review of all claims before an inmate may bring a § 1983 action." Beeson v. Fishkill Correctional Facility, 28 F. Supp. 2d 884, 887 (S.D.N.Y. 1998) (emphasis added).    Failure to exhaust all available administrative remedies mandates dismissal of plaintiff's claims. See Porter v. Nussle, 122 S. Ct. 983 (2002) (holding that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong.  Exhaustion of administrative remedies is a requirement, or condition precedent, under the PLRA, which must be met before a prisoner's § 1983 cause of action can accrue, regardless of whether the claim is brought in federal court or state court.  See, e.g., Martin v. Ohio Dep't of Rehab. & Corr., 749 N.E. 2d 787 (2001).  In addition, the exhaustion requirement as set forth in 42 U.S.C. § 1997e(a) is procedural, not jurisdictional.  Trial courts may, therefore, dismiss on the merits, despite the lack of exhaustion, if the claim on its face is frivolous or fails to state a claim.  42 U.S.C. § 1997e(c)(2); see, e.g., Brown v. Toombs, 139 F.3d 1102, 1103-4 (6th Cir. 1998).

Moreover, 42 U.S.C. § 1997e(a) states that "no action shall be brought" until the prisoner has exhausted his administrative remedies (emphasis added). The term "action" has acquired the technical meaning of referring to the case as a whole, referencing all claims advanced in the case. See Nolan v. Boeing, 919 F.2d 1058, 1066 (5th Cir. 1990);

16

Davis v. McCourt, 226 F.3d 506 (6th Cir. 2000). Because § 1997e(a) controls the prosecution of an "action" and an "action" consists of all claims asserted in a case, § 1997e(a) precludes the prosecution of a case if any claim asserted in the "action" is unexhausted. Accordingly, plaintiff's entire claim must be dismissed for failure to exhaust.

The Supreme Court in Porter held that "[e]ven when the prisoner seeks relief not available in grievance proceedings, notably money damages, exhaustion is a prerequisite to suit. And unlike the previous provision, which encompassed only § 1983 suits, exhaustion is now required for all 'action[s] . . . brought with respect to prison conditions,' whether under § 1983 'or any other Federal law.'" 122 S. Ct. at 988. Moreover, the Supreme Court has made clear that under the principles fundamental to a system of federalism, "state courts share responsibility for the application and enforcement of federal law." Howlett v. Rose, 495 U.S. 356, 372-73 (1990). The Court also held that "[s]tates may apply their own neutral procedural rules to federal claims, unless those rules are pre-empted by federal law." Howlett, 495 U.S. at 372 (citations omitted)(emphasis added).

In the instant case, formal grievance procedures were available to Plaintiff as set forth in 103 CMR 491.00 et seq. The Department of Correction grievance policy, 103 CMR 491.08, states that, "medical or clinical decisions related to an inmate's physical or mental condition shall not be grievable under 103 CMR 491.00 as the medical contractor is required to maintain its own grievance procedure, however, matters concerning access to medical or mental health care are grievable." See 103 CMR 491, attached as Exhibit 4.

There is no record that plaintiff filed a grievance with the Department complaining about defendants Dennehy and Micci and their alleged actions that violated his civil rights. See Lipka Affidavit, attached as Exhibit 5. Finally, Plaintiff's Complaint fails to plead exhaustion of all administrative remedies. Accordingly to the extent plaintiff is alleging denial of access to medical care, his Complaint must be dismissed for failure to exhaust his administrative remedies.

## VI.    THE    DEFENDANTS    ARE    ENTITLED    TO    QUALIFIED IMMUNITY.

Defendants Dennehy and Micci are public officers, and are thus entitled to at least qualified immunity from a suit for damages in their individual capacities. The doctrine of qualified immunity was established to protect government officials from the burdens of vindictive and harassing lawsuits, which may inhibit them from properly exercising their powers, while, at the same time, protecting private citizens from oppressive or malicious government action. Knight v. Mills, 836 F.2d 659, 665 (1st Cir. 1987) (citing Scheuer v. Rhodes, 416 U.S. 232, 238 (1974).

The Supreme Court reasoned that, "officials can act without fear of harassing litigation only if they reasonably can anticipate when their conduct may give rise to liability for damages." Davis v. Scherer, 468 U.S. 182, 195 (1984). The official "is not expected to determine the manner in which the law's grey areas will be clarified and defined." Borucki v. Ryan, 827 F.2d 836, 839 (1st Cir. 1987). Officials will succeed in their defense "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated," Anderson v. Creighton, 483 U.S. 635, 646 (1987). "[A] court must determine whether an alleged right was established with

18

sufficient particularity that a reasonable official could anticipate that his actions would violate that right." Borucki, supra at 383 (citing Anderson v. Creighton, supra at 646).

The Affidavit of Susan Martin, attached as Exhibit 1, contradicts plaintiff's allegations that he is not receiving proper medical treatment. Accordingly, defendants are entitled to qualified immunity with regard to the alleged constitutional violations because they acted in good faith reliance of the law as they understood it to be. The defendants cannot be held liable for damages to the plaintiff as a result of discretionary acts in the performance of their official duty where the acts did not constitute violations of a clearly established law at the time they acted.

Additionally, as previously explained, Commissioner Dennehy and Superintendent Micci cannot be liable in their supervisory capacities for alleged civil rights violations, as it is well settled that the liability of a public employer or supervising official for civil rights violations cannot be predicated on a theory of respondeat superior. See Polk County v. Dodson, 454 U.S. 312, 326 (1981); Monell v. Dept. of Social Services, 436 U.S. 658, 694 (1978); Hathoway v. Stone, 687 F. Supp. 708, 711 (D. Mass. 1988). Further, these acts or omissions must constitute more than mere negligence, but must amount to a reckless or callous indifference to the constitutional rights of others. Daniels v. Williams, 474 U.S. 327 (1986); German v. Vance, 868 F.2d 9, 17-18 (1st Cir. 1989). No affirmative link between Commissioner Dennehy or Superintendent Micci and the claimed constitutional rights violations has been shown. Plaintiff has failed to establish any personal involvement by Commissioner Dennehy, in her individual capacity, in the alleged violation of the plaintiff's constitutional rights under 42 U.S.C.

Section 1983. Moreover, plaintiff has not established a link between the alleged civil rights violations and Acting Superintendent Mici.

These defendants are not medical doctors, nor does the plaintiff allege that they are. As the Commissioner of Correction and Acting Superintendent of MCI Shirley, they are entitled to rely on the professional judgment of medical providers. Layne v. Vinzant, 657 F.2d 468, 472 (1st Cir. 1981); Camberos v. Branstad, 73 F.3d 174 (1995) (because they lacked medical expertise, the prison's treatment director and warden could not be held liable for medical staff's diagnostic decision to refer prisoner to doctor for treatment of a shoulder injury); McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977). Accordingly, plaintiff's Complaint must be dismissed in its entirety.

## VIII.    PLAINTIFF HAS NO CLAIM FOR RETALIATION.

Plaintiff claims that the defendants somehow retaliated against him. The courts impose stringent standards for prisoners' claims of retaliation for the exercise of grievances or litigation. First, courts recognize that "deference is due prison administrators in their attempts to secure the safety of prison staff, and to preserve discipline in the prisons." Sires v. Berman, 834 F.2d 9, 13-14. See also Gomes v. Fair, 738 F.2d 517, 525 (1st Cir. 1987).

Accordingly, in order to set forth a claim of retaliation, a prisoner must be able to demonstrate that the allegedly improper decisions would not have been made, "but for" the impermissible purpose of retaliation. Layne v. Vincant, 657 F.2d 468, 475 (1st Cir. 1981); McDonald v. Hall, 610 F.2d 16, 18 (1st Cir. 1979); Association for Reduction of Violence v. Hall, 558 F.Supp. 661, 662-663 (D. Mass 1983). Conversely, a prisoner cannot sustain a claim of allegedly impermissible conduct where the actions of the prison

officials were also supported by a permissible purpose. In <u>Scarpa v. Ponte</u>, 638 F.Supp.
1019, 1029 (D. Mass 1986), the Court held that even if the defendants had an
impermissible reason for disciplining the prisoner, they would still not be liable if they
also had independent, permissible reasons for doing so.

Second, courts recognize that a retaliation charge carries a substantial potential for
abuse. Without close judicial scrutiny, any prisoner who has ever grieved a complaint or
filed a lawsuit would be able to cry retaliation whenever correctional officials took any
action not to his liking:

> We believe that <u>in forma pauperis</u> plaintiffs who claim that their constitutional
> rights have been violated by official retaliation must present more than naked
> allegations of reprisal to survive. To hold otherwise would be to bring virtually
> every unpopular decision by state actors within the scope of a cause of action for
> retaliation.   This would pose particular problems in the context of prison
> administration.   Every act of discipline by prison officials is by definition
> "retaliatory" in the sense that it responds directly to prisoner misconduct. The
> prospect of endless claims of retaliation on the part of inmates would disrupt
> prison officials in the discharge of their most basic duties. Claims of retaliation
> must therefore be regarded with skepticism, lest federal courts embroil themselves
> in every disciplinary act that occurs in state penal institutions.

<u>Adams v. Rice</u>, 40 F.3d 72, 74 (4th Cir. 1994). In order to separate the wheat from the
chaff,

> [a] claim of retaliation must include a "chronology of events from which
> retaliation may plausibly be inferred." Citation omitted. Furthermore, an inmate
> claiming retaliation for the exercise of first amendment rights must show more
> than subsequent adverse administrative action, rather, the prison official's conduct
> must transcend all bounds of reasonable conduct and shock the conscience.
> (citation omitted.)

Plaintiff has <u>failed</u> to substantiate the conclusory allegations in his Complaint that
he is somehow being retaliated against by Commissioner Dennehy or Superintendent
Mici. In actions for alleged constitutional violations, "conclusory allegations will not

suffice." <u>Wise v. Bravo</u>, 666 F.2d 1328 (10th Cir. 1981).   In addition, as set forth in the

Michael Ruel memorandum, (Exhibit 3), plaintiff has that he was not in fear for his safety

from security staff.  Plaintiff also signed a waiver to remain in general population at

Shirley, indicating he was not in fear for his safety.  <u>Id</u>.  Moreover, when plaintiff was

interviewed by MCI Shirley Special Investigator Michael Ruel on February 27, 2004, he

told the investigator that "he appreciated the assistance in getting seen by Health Services

personnel."  Plaintiff also stated that all complaints he had forwarded to Acting

Commissioner Kathleen Dennehy would be retracted.  Finally, he said that all his

complaints have been addressed and resolved.  <u>Id.</u>  Accordingly, plaintiff's Complaint

against these defendants must be dismissed.

### IX.     <u>PLAINTIFF HAS NO ENTITLEMENT TO INJUNCTIVE RELIEF</u>.

Plaintiff's Complaint seeks "an order for the defendants to provide adequate

medical attention to the plaintiff."  Complaint, paragraph 19.  Plaintiff has also filed a

Motion for Temporary Restraining Order and/or Injunctive Relief with this Court.  Both

of plaintiff's requests should be denied.

In determining whether a preliminary injunction should issue, the Court must first

evaluate the moving party's probability of success on the merits.   If the Court is

"convinced that failure to issue a preliminary injunction would subject the moving party

to a substantial risk of irreparable harm, the Court must then balance this risk of

irreparable harm against any similar risk of irreparable harm which granting the

injunction would create for the opposing party."  <u>Packaging Industries Group, Inc. v.

Cheney</u>, 380 Mass. 609, 617 (1980).  Consequently, if the party seeking injunctive relief

can demonstrate that the equitable relief sought is essential to prevent irreparable harm

and the issuance of an injunction would create no substantial risk of harm to the opposing party, a "substantial possibility" of success on the merits warrants issuing the injunction. *Id.*    See also Suarez-Cestero v. Pagan Rosa, 172 F.3d 102, 104 (1st Cir. 1999); DeNovellis v. Shalala, 135 F.3d 58, 62 (1st Cir. 1998).

However, a preliminary injunction is a drastic measure that a Court should not grant unless the movant, by a clear showing, carries its burden of persuasion. Benoit v. Hillman, 1998 WL 1181783, *3, *citing* Charles Wright and Arthur Miller, 11 Federal Practice and Procedure, § 2948 at 129-130 (1995); See also  Intel Corp. v. ULSI System Technology, Inc., 995 F.2d 1566, 1568 (Fed. Cir. 1993); Schawbel Corp. v. Conair Corp., 122 F.Supp.2d 71, 75 (D. Mass. 2000).  The standard for the consideration of a request for preliminary relief is well settled. This Court must balance the risk of immediate, irreparable harm to the moving party should preliminary relief not be granted with the risk of harm to the non-moving party should the motion be allowed.

Central to this determination is whether the movant has a substantial likelihood of success on the merits, and the effect of the issuance of the requested preliminary relief on the public interest. Packaging Industries Group, Inc. v. Cheney, 380 Mass. 609, 615 (1980); Brookline v. Goldstein, 388 Mass. 443, 447 (1983).  For the reasons set forth in this memorandum, the plaintiff cannot establish a likelihood of success on the merits, and as such, cannot satisfy the test for injunctive relief.

Plaintiff also fails to meet the irreparable harm requirement.  The record shows that he has been receiving medical treatment and that the Department of Correction administrators have been addressing his inquiries.  He has presented nothing to indicate that the treatment provided is inadequate or inconsistent with professional standards.

23

The defendants, on the other hand, would suffer irreparable harm if the court allowed plaintiff's Motions. A Preliminary Injunction or Temporary Restraining Order in this case would circumvent existing policy and regulations promulgated by correctional officials for legitimate penological objectives and as such would not be in the public interest. Accordingly, the plaintiff should not be entitled to injunctive relief.

For all the foregoing reasons, this Court should deny the plaintiff's Motion for a Temporary Restraining Order and/or Injunctive Relief.

## CONCLUSION

For the aforementioned reasons, the defendants Commonwealth of Massachusetts, Department of Correction, Kathleen Dennehy and Carol Mici are entitled to dismissal of the plaintiff's Complaint in its entirety.

Dated: April 30, 2004                    Respectfully submitted,

                                         NANCY ANKERS WHITE
                                         Special Assistant Attorney General

                                         _____
                                         Jody T. Adams, Counsel
                                         BBO No. 633795
                                         Department of Correction
                                         Legal Division
                                         70 Franklin Street, Suite 600
                                         Boston, MA 02110-1300
                                         (617) 727-3300 x169

## CERTIFICATE OF SERVICE

I hereby certify that on this date a true copy of the above document was served on all parties of record via first class mail.

Dated: 4/30/04                          _____
                                         Jody T. Adams, Counsel

24