UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JOHN F. RICHARDS,<br>    Plaintiff<br><br>VS.<br><br>MASSACHUSETTS DEPARTMENT OF CORRECTION; UMASS CORRECTIONAL MEDICAL SERVICES; KATHLEEN DENNEHY, COMMISSIONER; CAROL MICI, ACTING SUPERINTENDENT; MASSACHUSETTS BOARD OF REGISTRATION (IN MEDICINE); M.L. ANGELES, MEDICAL DOCTOR; KHALID MOHAMED, MEDICAL DOCTOR; DR. CHILDS, MEDICAL DOCTOR; ASMA AHMED, NURSE PRACTITIONER; and JANE DOE NO. 1, PHYSICAL THERAPIST,<br>    Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) CIVIL ACTION NO. 04-CV-10291-RWZ<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
UMASS CORRECTIONAL HEALTH PROGRAM'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

In this civil action, the plaintiff, John Richards ("Richards"), a <u>pro</u> <u>se</u> prisoner incarcerated within facilities operated by the Massachusetts Department of Correction ("DOC"), seeks equitable relief in the form of an "order for the defendants to provide adequate medical attention to the plaintiff",[1] and only Court costs and fees if he prevails. (Complaint, ¶¶19, 22). In his Complaint, Richards asserts that the defendant[2], UMass Correctional Health Program[3] ("UCHP"), was callously and deliberately indifferent to his medical needs, causing him to suffer

---

[1] The Plaintiff also seeks to have the court "order an independent investigation into the plaintiff's claims", and to provide the plaintiff with an order of protection against "further retaliation by the defendants and their staff." (Complaint, ¶¶20-21). However, the pleadings, combined with plaintiff's comments at the May 5, 2004 Scheduling Conference, indicate that plaintiff is primarily concerned with a perceived lack of treatment.
[2] The Massachusetts Department of Correction is also a defendant in this matter, but is represented by separate counsel.
[3] UMass Correctional Medical Services is a misnomer.

physical harm, and resulting in a violation of his civil rights. UCHP disputes the assertions of civil rights violations and, on the basis of Mr. Richards' medical records and the Affidavit of Maria L. Angeles, M.D., ("Affidavit") incorporated herein by reference, pursuant to Fed. R. Civ. P. 10(c), move for summary judgment on the plaintiff's claims.

### PLAINTIFF'S ALLEGATIONS

Richards alleges that he has been injured since June 12, 2002 and, despite having seen "doctors, nurses as well as physical therapist and nurse practitioners" regularly, is unable to get a diagnosis and treatment plan from these medical personnel. (Complaint, ¶¶13, 14). Richards maintains that his condition worsened after he was involved in a fight with a cellmate who was infected with Hepatitis C and HIV. (Complaint, ¶14).

Richards also alleges that he is being mistreated by the defendants and their staff in retaliation for previous complaints he made against them regarding his medical treatment. (Complaint, ¶15).

Finally, Richards claims that his limbs swell up, that he is in constant pain and agony, has lost control of his body functions, has difficulty breathing and stops breathing at night. (Complaint, ¶16). Richards alleges that he has been complaining of these conditions for more than two years and now fears for his "health, safety, and welfare at the hands of the defendants and their staff who have acted indifferent towards him for along [sic] time now." (Complaint, ¶16).

For the reasons which follow, the defendant, UMass Correctional Health Program, moves for summary judgment in its favor and against the plaintiff.

# ARGUMENT

I. **SUMMARY JUDGMENT STANDARD**

F.R.C.P. Rule 56 provides that judgment shall be rendered if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. A material fact creates a genuine issue for trial "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lovvy, Inc., 477 U.S. 242, 248 (1986). In order to show the existence of a genuine issue of material fact capable of defeating a motion for summary judgment, the non-moving party must present specific factual evidence. Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The plaintiff cannot rely on "mere allegations or evidence that is less than significantly probative." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Anderson, 477 U.S. at 249-250 (citations omitted).

II. **THE DEFENDANT, UMASS CORRECTIONAL HEALTH PROGRAM, WAS NOT DELIBERATELY INDIFFERENT TO THE PLAINTIFF'S SERIOUS MEDICAL NEEDS AND IS ENTITLED TO SUMMARY JUDGMENT ON THE PLAINTIFF'S CLAIMS FILED UNDER 42 U.S.C. §1983.**

It is clear that "[i]n order to establish that medical mistreatment constitutes a violation of the Eighth Amendment, a prisoner must show 'acts or omissions' sufficiently harmful to evidence deliberate indifference to serious medical needs." Miranda v. Munoz, 770 F.2d 255, 259 (1st Cir. 1985), quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976). In Estelle, the Supreme Court articulated the standard to be applied to a claim by a prisoner that his constitutional rights were violated by the failure of prison officials to provide adequate medical services:

> [I]n the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint, that a physician has been negligent in diagnosing or treating a medical condition does not state a valid

3

> claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, <u>a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs</u>. It is only such indifference that can offend evolving standards of decency in violation of the Eighth Amendment.

<u>Id.</u> at 105-106 (emphasis added). Accordingly, under <u>Estelle</u>, it must be demonstrated that the specific acts or omissions relative to a prisoner's medical treatment constituted "an unnecessary and wanton infliction of pain" or were "repugnant to the conscience of mankind." <u>Id.</u>; see <u>Miranda v. Munoz</u>, 770 F.2d 255, 259 (1st Cir. 1985). "Where there is no evidence of treatment so inadequate as to shock the conscience, let alone that any deficiency was intentional or evidence of acts or omissions so dangerous with respect to health or safety, that a defendant's knowledge of a large risk can be inferred summary judgment is appropriate." <u>Torraco v. Maloney</u>, 923 F.2d 231, 234 (1st Cir. 1991).

In a relatively recent pronouncement, the United States Supreme Court reaffirmed <u>Estelle</u>, this time expressly holding that "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." <u>Farmer v. Brennan</u>, 511 U.S., 825, 837 (1994). <u>Farmer</u> thus equates deliberate indifference with criminal recklessness.

As illustrated by both the holding in <u>Farmer</u> as well as the principal case law, in the context of §1983 claims for infliction of cruel and unusual punishment, the federal courts have applied the standard enunciated in <u>Estelle</u> strictly and have defined "deliberate indifference" narrowly. See <u>e.g.</u>, <u>Ferranti v. Moran</u>, 618 F.2d 888 (1st Cir. 1980); <u>Layne v. Vinzant</u>, 657 F.2d 468 (1st Cir. 1980). In <u>Ferranti</u>, the court held that where medical attention was given to an

inmate, disagreement as to the appropriate course of medical treatment or the source of treatment did not constitute "deliberate indifference" and as such was not actionable as a violation of the Eighth Amendment.  Id. at 890.  Similarly, in Layne, the court held that even substandard medical treatment would not constitute a cognizable claim absent a showing of "deliberate indifference" to the serious medical needs of an inmate.  Id. at 474; Langton v. Commissioner of Correction, 34 Mass. App. Ct. 564 (1993)(alleged conditions under which inmates tested for tuberculosis did not constitute "deliberate indifference to serious medical needs").

As set forth above, assuming a plaintiff can satisfy the first prong of the Estelle standard by a showing of his "serious medical needs," something more than negligent treatment must then be alleged to state a claim for violations of the Eighth Amendment proscription against the infliction of cruel and unusual punishment.  Echoing the Supreme Court's rationale in Estelle, the Court of Appeals for the Sixth Circuit has said:  "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law."  Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976).  Neither an inadvertent failure to provide adequate care nor negligent treatment or diagnosis is actionable under 42 U.S.C. §1983, as the offending conduct must be wanton.  In order to establish deliberate indifference, the plaintiff must prove that the defendant had a culpable state of mind and intended wantonly to inflict pain.  DesRosiers v. Moran, 949 F.2d 15,19 (1st Cir. 1991).  Where, as in this case, the dispute concerns not the absence of medical care, but the choice of a certain course of treatment, the plaintiff must prove that the treatment was so clearly inadequate that it shocks the conscience or that it amounts to a refusal to provide essential care.  See Torraco

5

v. Maloney; 923 F.2d 231, 234 (1st Cir. 1991); Miranda v. Munoz, 770 F.2d 255, 259 (1st Cir. 1985); Layne v. Vinzant, 657 F.2d 468, 474 (1st Cir. 1981).

The plaintiff's evidence in this case comes nowhere near meeting the extremely high burden of establishing deliberate indifference by UCHP to his serious medical needs. As is amply demonstrated by the Affidavit of Maria L. Angeles, M.D. and the medical records attached thereto, medical care and treatment has been consistently provided to Richards in the form of medications, referrals to specialists, various diagnostic tests (both on-site and off-site), and specialized care in the chronic disease clinics. (Affidavit, ¶¶ 8-36).

Richards first complained of back groin and leg pain at MCI-Shirley on June 13, 2002, when he was examined by Paula Gabrielle, R.N. Richards stated that the pain was related to his use of certain gym equipment. Nurse Gabrielle noted that Mr. Richards had a full range of motion and prescribed a three day supply of Motrin 400mg. (Affidavit ¶10). Richards returned to the Health Services Unit ("HSU") on June 19, 2002, and was again examined by Nurse Gabrielle pursuant to his complaints of back, leg and groin pain. Nurse Gabrielle gave Richards a prescription for Motrin, for the pain . (Affidavit ¶11).

Richards medical records indicate that he returned to the HSU on August 4, 2002 for an examination and treatment following a physical altercation with his cellmate. Richards did not have any specific complaints at this time but treating nurse noted that Richards presented with a "reddened area" over his right lower back, lacerations on the second and third fingers of his right hand, and superficial scratches to his neck and right leg. The nurse cleared for segregation. (Affidavit ¶14).

Richards did not complain of back, leg and groin pain again until September 3, 2002, when Richards presented to Dr. Angeles at the chronic disease care clinic for treatment. During

this examination, Richards conveyed to Dr. Angeles that his lower back pain began "years ago in the army", contrary to what he told Nurse Gabrielle in June. Dr. Angeles performed a thorough examination on Richards prescribed him Elavil and Naprosyn. Dr. Angeles noted that Mr. Richards responded positively to the medications. In fact, Richards stated that the drug treatment "takes the edge off and makes me [Mr. Richards] comfortable." However, Richards, despite continued complaints of groin and lower back pain refused a genital and rectal examination, which Dr. Angeles recommended. (Affidavit ¶16).

On November 14, 2002, Mr. Richards was examined by Dr. Child for complaints of groin pain. Mr. Richards also requested Hepatitis C and HIV testing. Dr. Child noted that Mr. Richards was asymptomatic but ordered the requested Hepatitis C and HIV tests. Dr. Child also prescribed Motrin for pain control. (Affidavit ¶17). Two weeks later, Dr. Angeles informed Richards that he did not test positive for the Hepatitis C virus. (Affidavit ¶19). Richards received HIV counseling and an HIV test, per his request, on December 4, 2002. Richards was advised of the HIV test results on January 8, 2003. (Affidavit ¶20).

On November 18, 2002, Mr. Richards underwent an x-ray of the lumbar spine. The radiologist, Brendan Bottari, M.D., noted that "two views of the lumbar spine are within normal limits" and that there were no fractures of subluxations of the spine. (Affidavit ¶18). Dr. Angeles agreed with these findings and discussed them with Richards when he presented to the chronic disease clinic on December 3, 2002. Dr. Angeles prescribed Vioxx for Richards, increased his Elavil dosage, and also referred Richards to physical therapy. (Affidavit ¶19).

On January 30, 2003, Mr. Richards submitted for a physical therapy evaluation pursuant to Dr. Angeles' December 3, 2002 referral. The physical therapist noted that Richards was a good candidate for physical therapy and recommended that he return for up to three sessions, as

needed. The physical therapist also instructed Richards on how to properly perform rehabilitative exercises and gave him exercise sheets to take with him. Richards did not return for any subsequent physical therapy sessions. (Affidavit ¶21).

On March 13, 2003, Richards presented to Dr. Angeles at the chronic care clinic. Richards explained that his back pain was dissipating but still present. Richards also explained that the Elavil was working but the pain medication "wears off before the next dose". Dr. Angeles noted in Richards' chart that he was ambulating without problems, had a steady gait, exhibited no tenderness, and his motor function in both lower extremities was 5/5. (Affidavit ¶22).

On June 12, 2003, Richards presented to the chronic care clinic complaining of persistent lower back pain. Richards was noted to have no gross spinal deformities, no gait disturbance, a full range of motion, no atrophy of the lower extremities, and no tenderness. Richards was referred to a M.D. for reevaluation and offered patient education regarding his condition. (Affidavit ¶23). Richards followed-up with Dr. Child on June 26, 2003. Dr. Child's notes indicate that Mr. Richards was able to touch his toes and had a full range of motion and, therefore, did not need an MRI on his lower back at this time. Dr. Child's examination revealed that despite Richards' continued complaints of lower back pain, his main complaint was pain and a swelling sensation of the perineum and non-bleeding hemorrhoids. (Affidavit ¶24).

In August 2003, Richards was referred to the chronic care clinic for asthma following an examination. Richards was prescribed Albuterol to control his asthma. (Affidavit ¶25).

On February 27, 2004, Dr. Angeles examined Richards after he presented with lower back pain and complained of trouble breathing at night. Dr. Angeles prescribed a trial of Sudafed for questionable nasal congestion, ordered labs, and submitted a referral for a

neurological consult. The Consultation Request form indicates that Mr. Richards was prescribed Tylenol #3 (a narcotic medication) for pain relief. (Affidavit ¶26).

On March 3, 2004, Richards sent a correspondence to Carol Mici, Acting Superintendent, MCI-Shirley, and expressed concerns that the nursing staff had been disrespecting inmates, including himself. Ken Clacherty, R.N., Health Services Administrator, responded to Richards' letter on March 6, 2004 wherein he indicated that he spoke with the nursing staff and reminded them that "all patients and staff are to be treated with respect". (Affidavit ¶27).

On March 11, 2004, Dr. Angeles examined Richards at the chronic disease clinic and Richards stated that the pain medication he was receiving was helping with his back. (Affidavit ¶28).

On March 12, 2004, Richards was transferred to the Neurology Clinic at the Lemuel Shattuck Hospital. The treating physician, Dr. Bharani, recommended "imaging" the whole spine to "rule out cord involvement". Dr. Bharani also recommended that Richards be given a soft collar, neck exercises, and Neurontin for symptom relief. (Affidavit ¶29). Dr. Angeles gave Richards a soft collar for his neck on March 18, 2004. (Affidavit ¶31).

On March 15, 2004, Dr. Angeles completed and submitted a Consultation Request form on behalf of Richards and ordered an MRI, multiple views. (Affidavit ¶30). Dr. Angeles met with Richards to discuss the neurology clinic's recommendations and to explain the procedures for his pending MRI. (Affidavit ¶31). On April 2, 2004, Richards was transported to the New England Medical Center for an MRI on his lumbar spine, cervical spine, and dorsal spine. Dr. Ossiani indicated that the MRIs were unremarkable. (Affidavit ¶32). Dr. Angeles discussed the results of Richards' recent MRIs with him on April 8, 2004. Richards stated that while he wears the soft collar to sleep at night, he can't get comfortable and has trouble falling asleep. However,

Richards appeared comfortable at that visit, worked in the kitchen, and was able to ambulate without problems. Dr. Angeles referred Richards for a rheumatoid consultation and questioned myalgia syndrome. (Affidavit ¶33).

Between July 13, 2001 and March 18, 2004, Richards had numerous blood and urine workups in an attempt to determine a source for his symptoms. All of these tests were within normal limits. (Affidavit ¶34).

On April 30, 2004, Richards was evaluated by Dr. Pariser at the Rheumatology Clinic at Lemuel Shattuck Hospital. Richards was diagnosed with Fibromyalgia and medications were recommended. On May 3, 2004, Dr. Angeles saw Richards on follow-up and informed him of medications that were ordered, as recommended by Dr. Pariser. Dr. Angeles saw Richards again on follow-up on May 11, 2004, at which time he stated that "pain is much better but I'm still having the tremors/shakes." Therefore, the medication dosage was adjusted and Richards is scheduled for a urology follow-up for the reevaluation of the tremors/shakes. (Affidavit ¶35).

Since June 2002, specifically, the time period referenced in the Complaint, there were no instances, documented or otherwise, where Mr. Richards was denied medical treatment or treated in a deliberately callous or indifferent manner. He has received ongoing, appropriate evaluation, care, and treatment. He will continue to receive the appropriate care and treatment as warranted by his medical condition. Affidavit ¶36.

Richards allegations that UCHP and its staff denied him his rights to adequate medical treatment with "callous and deliberate indifference to their constitutionally mandated duty" defies the evidence provided by the medical records. Richards has presented no evidence or even an allegation of UCHP's or its medical staffs' conduct which is "repugnant to the conscience of mankind" or is "an unnecessary and wanton infliction of pain." See Miranda v.

Munoz, 770 F.2d 255, 259 (1st Cir. 1985). Where, as in this case, there is absolutely no evidence of "treatment so inadequate as to shock the conscience, let alone that any deficiency was intentional…," summary judgment is appropriate. Torraco v. Maloney, 923 F.2d 231, 234 (1st Cir. 1991).

III.  **DEFENDANT UCHP IS ENTITLED TO SUMMARY JUDGMENT SINCE THERE IS NO RESPONDEAT SUPERIOR LIABILITY FOR THE ALLEGED CIVIL RIGHTS VIOLATIONS.**

The only claims against UCHP is in its role as administrator/employer of the health services personnel. This role is insufficient as a basis upon which to sustain claims of civil rights violations. UCHP's role as employer is insufficient grounds for holding it liable for any of the alleged civil rights violations which may have been committed by others; it must be shown to have actually been involved in the alleged civil rights violations. See Monell v. Dept. of Social Services, 436 U.S. 658, 690-695 (1978); Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581-582 (1st Cir. 1994); Bowen v. Manchester, 966 F.2d 13, 20 (1st Cir. 1992). Since the plaintiff has neither alleged nor demonstrated the direct involvement by UCHP in the civil rights violations he charges, his claim of deliberate indifference as to these defendants must fail as a matter of law.

A claim of respondeat superior is not cognizable under §1983. A corporation acting under color of state law can only be held liable for its own unconstitutional policies. See Monell, supra at 690. The proper test is whether there is a policy or custom that inflicts injury actionable under §1983. Sanders v. Sears, Roebuck & Company, 984 F.2d 972, 976 (8th Cir. 1993). Here, the plaintiff has neither alleged nor proven the existence of such a policy or custom. Moreover, UCHP cannot be liable on a respondeat superior theory. The fact that UCHP employed the medical staff who evaluated/treated the plaintiff does not make it liable under §1983. Id.

Therefore, UCHP is entitled to summary judgment, and the claims against it should be dismissed.

## CONCLUSION

For all of the foregoing reasons, the defendant, **UMass Correctional Health Program**, respectfully requests that summary judgment be entered in its favor on the plaintiff's claims in this matter.

                         Respectfully submitted,

                         The Defendant,
                         *UMASS CORRECTIONAL*
                            *HEALTH PROGRAM*

                         By its attorneys,

                         MORRISON, MAHONEY & MILLER, LLP

                           /s/   Charles M. Urso
                        _____
                        Bruce R. Henry, BBO #230880
                        Charles M. Urso, BBO #647748
                        250 Summer Street
                        Boston, MA 02210
                        (617) 439-7500