SCANNED
DATE: 07/01/04
BY: _____

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION
NO. 04-cv-10291-RWZ.

JOHN F. RICHARDS
    Plaintiff,

v.

UMASS. CORRECTIONAL HEALTH,
PROGRAM ET;AL,
    Defendants.

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF OPPOSITION TO DEFENDANTS REQUEST FOR DISMISSAL AND/OR SUMMARY JUDGEMENT.

### I-INTRODUCTION

The defendant, UMass.Correctional Health Program, requests a ruling pursuant to Fed. R. Civ. P. 12(b)(6), and 56, alternatively summary judgement, alleging that the plaintiff has not demonstrated beyond doubt that a provable set of facts exist which duly entitle him to relief. **Nader v. Citron,** 372 Mass. 96. 98, 360 N.E.2d 870 (1977).

The plaintiff's however, are given the benefit of doubt and the court accepts as true such inferences as may be drawn from their complaint in their favor. **Nader, supra.**

In <u>Harvard Law School Coalition for Civil Rights v. President & Fellows of Harvard College,</u> 413 Mass. 66, 71, 595 N.E.2d 316 (1992), the court said that a plaintiff can withstand a motion to dismiss if he has alleged facts that do entitle him to relief, not withstanding if he has not alleged the correct legal theory in his complaint.

Further, the court is limited to the contents of the complaint itself when considering a R. 12(b)(6) motion to the court. <u>Whitehall v. Merrimack Valley Dist. Co., Inc.,</u> 56 Mass. App. Ct. 853, 856 n.6, 780 N.E.2d 479 (2002), (quoting <u>Epstein v. Seigel,</u>), 396 Mass. 278-79, 485 N.E.2d 947 (1985). "The rules of pleading in Massachusetts are generous". <u>Capazzoli v. Holzwasser,</u> 397 Mass. 158, 162, 490 N.E.2d 420 (1986) (Abrams, J., concur.) (quoting <u>Spence v. Boston Edison Co.,</u> 390 Mass. 604, 615, 459 N.E.2d 90 (1983).

"Rule 12(b)(6) is not even a blunt instrument and should seldom be the weapon of first choice. Rule 56 is the deadly one". <u>Kirkland Constr. Co. v. James,</u> 39 Mass. App. Ct. 559, 565, 658 N.E.2d 699 (1995).

The plaintiff's are heedful of the boilerplate language setting out the prescribed scenario, to be followed in a summary judgement context, while reiterating their claim that the defendants misapply the regulations or law as to the facts in this matter. <u>Community Nat'l. Bank v. Dawes,</u> 369 Mass. 550, 553, 556, 340 N.E.2d 877 (1976).

Therefore, the plaintiff's have demonstrated a provable set of facts entitling them to relief, that they stated their claim clearly, which is sufficient to negate the defendants' move for dismissal of summary judgement. Cf. **Kourouvacilis v. General Motors Corp.,** 410 Mass. 706, 715, 575 N.E.2d 734 (1991) ("Plainly , a conclusory assertion that the nonmoving party has no evidence is insufficient.").

In **West v. Atkins 487 US 42, 56, 108 S.Ct 2250,** contracting out Medical care "does not" relieve the State of its Constitutional duty to provide adequate medical treatment to those in its custody, and it does not deprive the State's prisoners of the means to vindicate their Eighth Amendment Rights . The State boe an affirmative obligation to provide adequate care to West; the State deligated that function to respondent Atkins; and respondent voluntarilly assumed that obligation by contract.

## II-UNDISPUTED FACTS

1. The plaintiff John F. Richards, is an inmate who is Lawfully incarcerated and currently being housed at MCI-Shirley Medium and has been housed at said facility since 2002.

2. The plaintiff is and has been at all times since this action and at all times leading up to this action in constant pain as a result of some still not diagnosed and/or treated injuries.

3. Dr.Angeles is a Licensed Medical Doctor in the Commonwealth of Massachusetts, and she is the Medical Director for the health services unit at MCI-Shirley (Medium).

4. UMass Correctional Health Program has based most of its defense solely on the Affidavit supplied by Dr.Angeles and has put their faith in the facts she has presented.

### III-Disputed Facts

5. The plaintiff has no real problem with the first seven (7) paragraphs of the Affidavit of Maria L. Angeles, M.D. so the plaintiff will start his defense from (Affidavit, ¶8).

6. In ¶8 Maria Angeles states that that contrary to the assertions made by the plaintiff, the palintiff was provided with appropriate treatment and medical attention for his injuries of which he complains. The plaintiff contends that this statement is not true and directs the court to to plaintiff's exhibits, E, E-1 , E-2, E-3, H, K, M, N, O, P, Q, R, S, and T. Also the plainitff has filed a clinical compalint form provided to him by the Law librarian at MCI-Shirley medium, (see plaintiff's exhibit G), the plaintiff has also written several other letters of complaint to the former Health Services Director (Ms.Morningstar), which are all missing from Dr.Angeles Affidavit, or maybe they were just forgotten.

7. In the Angeles Affidavit, ¶9, she states that the records do not support the plaintiff's alegations. This is because all of the complaints, letters ect, are either missing, or were not put in the record in an attempt to sway the courts decission in their favor. So it is either an accident and/or mistake that these many complaints were left out and away from the eyes of the court or someone is lying to this Honorable Court.

8. In Affidavit, ¶10, the palintiff was seen by a nurse for the first time for this matter. On June 13,2002 the plaintiff was seen by a nurse Paula Gabrielle after putting in a sick call slip to see a Doctor for his injuries. This nurse was very rude, and could not care less about the plaintiff's injuries, she never so much as took the plaintiff's vital signs,, she just wrote some medication without ever putting a hand on the plaintiff.

9. After being refused this medication on numerous occasions the plaintiff put in another sick call slip once again to see a Doctor for his injuries which were getting worse. On June 19,2002 the plaintiff was once again sent to the health services unit and seen by nurse Gabrielle again. This time she was very rude and agrivated at the plaintiff for putting in another sick call slip and having to make her work. After about two (2) minutes of the plaintiff being in the treatment room with nurse Gabrielle a correctional officer came into the examining room and started to have a conversation with nurse Gabrielle about where they were going to eat lunch and what they were going to order, this went on for almost twenty (20) minutes while the plaintiff sat in the chair in disbelief. The plaintiff left the examining room at this time and was never treated by nurse Gabrielle at this time. The plaintiff wrote a letter of complaint about this to the health services administrator (Ms.Morningstar), and also to the medical director see plaintiff's exhibit E.

10. The plaintiff was then seen by a Doctor Mohamed. This doctor was also not named at all by Dr.Angeles or mentioned by the attorneys either and there is a whole different reason for this.The plaintiff was seen a total of three (3) times by Dr. Mohamed, which is not indicated in the records supplied to the court by the defendants. Two out of the three times the plaintiff met with Dr.Mohamed he had words with this doctor and got what added up to No (0) medical treatment from this medical doctor, on the third occaision Dr.Mohamed told the plaintiff in a rage that he did not give a (expletive) what was wrong with the plaintiff, and told the plaintiff to get the (expletive) out of his office. The plaintiff filed a complaint with the Massachusetts Board of Registration regarding his treatment by Dr.Mohamed, and the fact that he received substandand care, see plaintiff's exhibits E-1, E-2, and E-3. This doctor was also represented by the same law firm representing the defendant Umass in this matter and in fact this matter before the board was handled by the same attorney, so how then can anyone say that they know of no incidents and no abuse when it is right there in front of them. The plaintiff was not allowed to attend the hearing in this matter, only sent the results. This doctor has been shipped from one correctional facility to another as a result of complaints against him, this is well known to inmates so it is also well known by the staff, who somehow feel that it is justifiable behavior and look the other way whenever it is possible for them to do so.

11. In the Angeles Affidavit ¶14, the plaintiff was seen after an altercation with his cellmate. This cellmate was put into the plaintiff's cell by the defendants, this inmate came from another housing unit to where the plaintiff was being housed, the plaintiff was forced to move from his bottom bunk to accomodate this new cellmate who the administration knew was a problem inmate, the plaintiff felt that this was done to provoke a fight with the plaintiff and this other inmate and it worked. It was later learned by the plaintiff that this inmate who he had the altercation with had hepathitus-C and HIV. The plainitff had asked the medical personell for months to get tested for these two (2) deadly diseases, the plaintiff's pleas were ignored by the medical staff until the Health Services Director at the time (Ms.Morningstar) was contacted by the Veterans Administration regarding his health concerns.

12. On August 30th a mental health staff member did speak to the plaintiff in his cell in the special management unit. The plainitff spoke directly to this staff member and never "refused" any interview with this staff member, who by the way came by at least three (3) times a week to check on inmates in segregation.

13. On September 3,2002 the plaintiff was seen by Dr.Angeles who called him out of his segregation cell to be seen, Angeles Affidavit ¶16, The plaintiff was in an examining room smaller than his prison cell with the doctor and three (3) correctional officers. Although inmates who are in segregation are supposed to be monitored in the exam rooms by a (1) correctional officer, the plaintiff was in a small confined space with no room to do anything, even move and this is why the plaintiff at this time passed on the rectal exam.

14. On November 14, 2002 the plaintiff was seen by Dr.Child in the health services unit. This doctor was very rude, never at any time put a hand on the plaintiff, but yet he prescribed some medication for the plaintiff, Dr.Child did however order the HIV and Hepatitis-C test that the plaintiff asked for. It is also important to point out that Dr.Child is yet another Doctor who is bounced around from one correctional facility to another from all of the complaints against him for his behavior.

15. On December 04,2002 the plaintiff was given counseling and his HIV test by a nurse Leona Berry, one of the few staff at MCI-Shirley who does her job in a very proffessional manner and always does her job and treats everyone with the same respect in which she is given. This nurse told the plaintiff that it was a shame what was done to him and that he had to wait so long after being exposed to this deadly disease to get tested. The plaintiff waited months to be tested after he was exposed to the disease and was only tested after some intervention from Mass. corr.Legal services, and a few veterans organizations who called the Health Services Director (Ms.Morningstar) on behalf of the plaintiff.

16. In about the middle of December the plaintiff was sent to the Health Services Unit to see Ms.Morningstar who was the Health Services Director at this time. She explained to me that she had several calls regardding my health concerns and that the defendant Ms.Mici had also aked her to look into my situation.

-8-

After talking to the plaintiff and reviewing his medical record and all of the complaints that the plaintiff had written, Ms. Morningstar stated that she could not believe the way her staff had treated the plaintiff, and that this had gone on for as long as it had. Ms.Morningstar apologized to the plaintiff at this time and called Dr. Angeles into her office. Ms. Morningstar at this time explained to Dr. Angeles that this needed to stop and at this time "told" Dr. Angeles to take care of the plaintiff's health care issues. Yet another situation not mentioned in the Affidavit of Maria Angeles.

17. On March 13,2003 and on June 12,2003 the plaintiff was seen again by Dr. Angeles. Both times the plaintiff explained to her that he was in constant pain and that his legs keep swelling up, also that his whole body would begin to shake and convulse out of nowhere.

18. The plaintiff again saw Dr. Child who never at anytime during this exam put a hand on the plaintiff. Dr. Child asked the plaintiff to do a few bends and twist after which Dr. Child told the plaintiff that he was going to cancel any test ordered for the plaintiff as he felt there was nothing wrong with the plaintiff. Once again this Doctor was very rude and stated to the plaintiff that "you are in better shape than I am" and I do not believe that there is anything wrong with you. Dr.Child stated that I did not need an MRI and stated that what I needed was a scope to check out my rectal area. (this from a proffessional Medical Doctor). UMass. evidentely has a differnt idea of what a proffessional is than I do.

19. The plaintiff was also seen several times by a nurse practitioner by the name of Ahmed Ashma during this period, this is also not mentioned in the Angeles Affidavit, this nurse practitioner also was supposed to order test for the plaintiff but of course this was never done.

20. On March 3, 2004 the plaintiff sent a letter to the defendant Carol Mici about an altercation with the Nurses in the Health services unit. These nurses told the plaintiff that he was not going to get his medication and if he did not like it he then he should consider buying his own medication from the (expletive) canteen for now on. These nurses were very vocal and tried to get the plaintiff locked up in the special management unit.

21. Since the filing of this action your plaintiff has been seen by several outside medical doctors. Nobody has to this day found out exactly what is wrong with the palintiff, on doctor has diagnosed the plaintiff with a condition known as Fibromyalgia. This docter was very proffessional, explained this condition to the plaintiff, and also how he was going to treat it, also the plaintiff has seen the Nuerologist two (2) times at the Shattuck Hospital, yet another doctor who prescribed the plaintiff some medication, treated the plaintiff in a very proffessional manner, and has offered to monitor the plaintiff's condition.

22. Back on January 30, 2003 the plaintiff was called to the health services unit to see the physical therapist. The plaintiff had a 12:00P.M. appointment, and the plaintiff was there on time. the plaintiff waited almost an hour and was told that the person who was doing the physical therapy was busy at this time, the plaintiff thought that she was backed up with another patient and

was willing to wait as sometimes these things happen. After the plaintiff waited almost an hour the physical therapist came out of her office, not with a patient but with a correctional officer who she had been having lunch with. She gave the plaintiff some instructions and had him do some stretches for her, this only took a few minutes, she then gave the plaintiff some exercises to do (plaintiff's exhibit F-1).She stated that the plaintiff was to do these exercises and that she would see him in two weeks as she was going to see him another 4 or 5 times, (physical therapy report/exhibit F). She never showed the plaintiff how to do these exercises and never wrote down how many to do or for how long. The physical therapist was just trying to hurry up and get rid of the plaintiff at this time, and although he was supposed to start physical therapy the plaintiff has never been called back for his treatment. The physical therapy person has been another one of the problems with the medical here at shirley medium, we know it, the staff, knows it, and people like Mass.Corr.Legal Services knows it as they are always lobbying to get people their treatments. Alot of people including the plaintiff have raised this issue and have gotten nowhere. These so called Medical proffessionals are here to treat inmates for their medical needs , not to date and hang around with the correctional staff, which is of course what actually happens.

    23. The Plaintiff is in no way stating that UMass. in itself is a bad medical provider and/or a bad hospital. It is well known even to the plaintiff that in fact UMass medical is a very good health care provider, at least on the streets. When these people

took over the medical contract for the DOC they made the same mistake as many in the past and kept on the same staff who time after time just keep abusing their power and providing nothing in the way of care to the inmate population, the medical staff is more concerned with eating, throwing parties, and hanging out and/or dating the correctional staff. The correctional staff share inmate information with the medical staff,(a clear CORI violation), and the medical staff in turn feed the correctional staff with inmate health care information,(yet another illegal act), but it is sanctioned by those who should be shutting this kind of behavior down, so the situation is and will not get any better unless something changes. The plaintiff should be allowed to move into the discovery process, go after some documents and computer records which the plaintiff is sure will prove that this practice not only exist but happens on a daily basis. And it is not just the medical staff. Since having a new computer system installed any Correctional officer can obtain any information he/or she wishes to obtain about an inmate with the click of a mouse , whether or not they are actually cleared to view this material and they share this illegally obtained information amongst not only themselves but also with inmates, another clear CORI violation, and it happens as there is no monitoring or this new system whatsoever.

24. If the court looks at plaintiff's exhibit D, it is an eight (8) page report by Health Law Advocates and it explains exactly what the plaintiff is trying to tell this court, that the health care system is broken and needs to be fixed. This report was done at the request of the governors council on corrections

reform. It is dated 2/25/04 and was presented to Mr.Harshbarger and his committee, so everyone, including the Department of Corrections, UMass medical, and the Massachusetts Legislature know of this report, and its problems but things as usual have not changed and the abuse continues.

25. The palintiff has also enclosed pages of several Exhibits A & B, for the court to read and see what the Department of correction policy is, and plaintiff's exhibits G, G-1, G-2, which are the grievance form provided to inmates at the inmate library, the real grievance form for Umass, along with the real grievance policy for the medical department here. This "real" grievance policy was only made available to inmates after this action was filed and is still not posted in all housing units and is not posted in the inmate library, or law library.

26. The plaintiff has also enclosed several other letters to and from several other sources to let the court know that not did he file a grievance in this matter he also tried many other avenues to resolve this issue before he filed this action within this Honorable Court. The plaintiff also provided the court with copies of Plaintiff's exhibits L through L-7. These deal with the law library, and the fact that the plaintiff was denied access to this class and an opportunity to learn how to effectively research the law and his legal matters. Although the staff here at MCI-Shirley have denied that this has happened, even to their own boss, Kathleen Dennehy, the paperwork does not lie, and in fact if the court reads this paperwork it can see that the staff here at shirley denied the plaintiff access to this law class because they do not like what the plaintiff is in prison for. No other reason.

this in itself is discriminatory, and the plaintiff is sure that this is the same reason he is not receiving proper and adequate medical treatment.

27. **wherefore**, for the reasons stated in this opposition and and the fact that either the defendants are lying to the court and/or have very selective memories, it is PRAYED that this court DENY the defendants Motion for summary judgement, that the court ORDER the defendants to provide the plaintiff medical treatment for his longstanding injuries, and that the plaintiff be ALLOWED to move forward with this action as there is a real genuine issue of fact that does exsist and there is an issue for trial.

Respectfully Submitted,

John F. Richards pro-se,
C-49993/C-1 #58B.
MCI-Shirley (Medium).
P.O.Box-1218/Harvard Road.
Shirley, Massachusetts
01464.

Dated: June 28, 2004.

-14-

## CERTIFICATE OF SERVICE

I John F. Richards, the pro-se Plaintiff, hereby certify that on this date a true copy of the above document was served on Bruce R. Henry, and Charles M. Urso of Morrison, Mahoney & Miller, LLP as Legal Counsel for Umass Correctional Health Program, via First Class Mail.

Dated: June 28, 2004

_____
John F Richards
pro-se,