UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10291-RWZ

JOHN F. RICHARDS

v.

MASSACHUSETTS DEPARTMENT OF CORRECTION, et al.

MEMORANDUM OF DECISION

February 7, 2005

ZOBEL, D.J.

Plaintiff John F. Richards is currently an inmate at the Massachusetts Department of Correction facility known as MCI-Shirley and complains of inadequate access to and provision of medical care for an injury. He asserts that such poor access and treatment constitute civil rights violations, namely, cruel and unusual punishment, under the Eighth and Fourteenth Amendments. Accordingly, he seeks relief under 42 U.S.C. § 1983 from the following ten defendants: the Massachusetts Department of Correction ("MDOC"), UMass Correctional Health Program ("UCHP"), MDOC Commissioner Kathleen Dennehy ("Dennehy"), Acting Superintendent of MCI-Shirley Carol Mici ("Mici"), Massachusetts Board of Registration in Medicine and five individual clinicians, each of whom has been named in both her official and personal capacities. Specifically disclaiming money damages, plaintiff requests injunctive relief in the form of a court order for appropriate medical care and an independent review of treatment quality and efficacy.

MDOC, on behalf of itself, Dennehy and Mici (the "State Defendants"), now moves for dismissal and/or summary judgment on all claims. UCHP separately moves for summary judgment on all claims. Plaintiff opposes all motions.

The first ground asserted by MDOC in support of dismissal challenges federal jurisdiction over plaintiff's claim by arguing that plaintiff has failed to exhaust all available administrative remedies before filing suit. Plaintiff's grievance amounts to a complaint about prison conditions and thus falls within the scope of the Prison Litigation Reform Act of 1995 (the "PLRA"). See 18 U.S.C. § 3626. Under the PLRA, a prisoner must exhaust all internal administrative remedies before bringing an action regarding prison conditions. See 42 U.S.C. § 1997e and Porter v. Nussle, 534 U.S. 516, 532 (2002). MDOC regulations provide an internal grievance process for "matters concerning access to medical or mental health care" but not for "medical or clinical decisions related to an inmate's physical or mental condition," as such decisions should be addressed to and by the individual provider in question. 103 C.M.R. § 491.08. While plaintiff has been seen by multiple clinicians, he alleges hardship with access to prescribed or recommended pharmaceuticals and to disease testing that he allegedly did not receive for several months. In response to defendant's exhaustion argument, plaintiff points out that MDOC never provided authorized grievance forms or any other means for initiating a complaint and, thus, never offered a legitimate process. In any event, he says that he attempted to use the grievance process by completing an unauthorized form, the only form available. Because plaintiff's opposition brief contains

factual allegations that challenge whether MDOC provided a means for exhaustion, MDOC's motion to dismiss this portion of the complaint on the basis of non-exhaustion is denied.

MDOC's next basis for dismissal argues that plaintiff may not sue MDOC in connection with any claim pursuant to § 1983, because it is not considered a "person" under federal law for purposes of a § 1983 claim. Section 1983 provides a general remedy for violations by a "person" of rights secured by the United States Constitution or a federal statute. Although "neither a state agency nor a state official acting in his official capacity may be sued for damages in a section 1983 action," this prohibition does not apply to claims for prospective injunctive relief such as that requested by plaintiff. Johnson v. Rodriguez, 943 F.2d 104, 108 (1st Cir. 1991). See also, Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989) and Mitchell v. Massachusetts Dept. of Correction, 190 F. Supp. 2d 204, 214 (D. Mass. 2002). Because plaintiff specifically seeks only injunctive relief and not monetary damages, MDOC's motion to dismiss on this basis is denied.

MDOC succeeds, however, in its motion for summary judgment. Even if the Court assumes, without finding, that plaintiff properly exhausted all claims and that all facts alleged by plaintiff in his complaint and opposition brief would be proven, these facts still would not merit a finding that MDOC, Dennehy and Mici subjected plaintiff to cruel and unusual punishment. In the context of medical treatment in a prison setting, such a claim must "allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976).

"Deliberate indifference is conduct that offends evolving standards of decency in a civilized society" and may be demonstrated, for example, by evidence of a refusal to treat or a denial of care. DesRosiers v. Moran, 949 F.2d 15 (1991). See also, Watson v. Caton, 984 F.2d 537, 540 (1st Cir. 1993).

MDOC, Dennehy and Mici were not directly responsible for delivering medical care to inmates. Rather, they arranged for such treatment by coordinating clinicians, appointments and medicines. As "respondeat superior is not available as a theory of liability under § 1983," plaintiff must demonstrate that these defendants had either actual knowledge of his need for care but were administratively negligent to the degree of deliberate indifference or lacked actual knowledge because of deliberate indifference and therefore failed to remedy his need. Navedo v. Maloney, 172 F. Supp. 2d 276, 284 (1st Cir. 2001). See also, Layne v. Vinzant, 657 F.2d 468, 471-472 (1st Cir. 1981). In other words, plaintiff must show that he suffered serious medical needs and that there exists "a genuine dispute as to whether [these defendants] knew of [plaintiff's] medical needs *and* knew that the medical care being provided to him was 'clearly inadequate' to meet those needs." Navedo, 172 F. Supp. 2d at 285 (emphasis in original).

Neither plaintiff's complaint nor the record provide sufficient facts to make this showing. With respect to serious medical needs, plaintiff asserts no facts and provides no evidence that his swollen limbs, breathing difficulties and loss of control over bodily functions constitute a serious medical need. Regarding plaintiff's need for disease testing, he sought this treatment after fighting in August of 2002 with another inmate who reportedly suffered from the human immunodeficiency virus and hepatitis C. See

Ex. E, Pl. Opp'n.  By all parties' accounts, the requested testing was ordered in November of 2002.  See ¶¶ 14-15, Pl. Opp'n. and Ex. B, Angeles Aff.  A three-month delay in testing does not indicate that MDOC, Dennehy or Mici "ignore[d] [plaintiff's] medical condition, deprive[d] him of needed care in any constitutionally significant sense, or display[ed] an intention of punishing him by withholding treatment." DesRosiers, 949 F.2d at 19.  While plaintiff may have been improperly denied access to certain medications, plaintiff's exhibits show that these mistakes were corrected within a month and accompanied by written confirmation from MDOC.  See, e.g., Ex. R, Pl. Opp'n.  In support of his claim of deliberate indifference, plaintiff observes that some of his treating physicians rotated through the state correctional facilities, because inmates consistently complained about their quality of care.  See ¶¶ 10 and 14, Pl. Opp'n.  However, plaintiff never suggests that MDOC, Dennehy or Mici was familiar with these rotations, much less aware of these physicians' negative reputations.  He argues that his treatment was clearly inadequate and that he suffered ongoing discomfort as a result of being seen by clinicians who treated him rudely, ignored his concerns and often abandoned him during appointments.  He further asserts that MDOC, Dennehy and Mici were aware of this conduct, because he sent them written complaints and recruited third parties to communicate with them on his behalf. However, even if these defendants were aware of plaintiff's treatment issues, responsive letters to plaintiff from representatives of MDOC, Dennehy and Mici reflect efforts by these defendants to ensure, not ignore or deny, adequate provision of care. See, e.g., Ex. H, K and R.  Moreover, plaintiff's medical chart indicates that he has

been treated by multiple clinicians, and "there is nothing in the medical records to alert [these defendants] that plaintiff's treatment was inadequate." Layne, 657 F.2d at 474. While plaintiff contends that "defendants [MDOC, Dennehy and Mici] *could* have done more in terms of procuring treatment for [him], this is far short of the standard of 'deliberate indifference' to which the Eighth Amendment holds prison officials." See Navedo, 172 F. Supp. 2d at 285. Accordingly, MDOC's motion for summary judgment is allowed.

Defendant UCHP also moves for summary judgment, and this motion is also allowed. As with MDOC, plaintiff may not anchor UCHP's liability to a theory of respondeat superior in the context of a § 1983 claim. See Navedo, 172 F. Supp. 2d at 284. Moreover, plaintiff has not alleged any facts that, if proven, would implicate UCHP in its capacity as the employer and administrator of health service personnel for MDOC. While plaintiff complains that the medical staff at MCI-Shirley focuses more on social activities than on their obligation to provide medical care, he never asserts that UCHP was aware of this alleged problem. Instead, plaintiff acknowledges UCHP's positive reputation as a healthcare provider and advises that UCHP should not have retained the previous staff when it assumed the MDOC contract to treat inmates. Be that as it may, this criticism does not establish UCHP's awareness of, or indifference to, allegedly inadequate medical care. To the contrary, plaintiff's medical chart indicated that he was being seen by multiple clinicians working to improve his health, and the health services administrator provided written updates to plaintiff addressing decisions or issues with his care. Plaintiff may disagree with his clinicians' recommendations, but

"courts have consistently refused to create constitutional claims out of disagreements between prisoners and doctors about the proper course of a prisoner's medical treatment, or to conclude that simple medical malpractice rises to the level of cruel and unusual punishment." Watson v. Caton, 984 F.2d 537, 540 (1st Cir. 1993).

Accordingly, both MDOC's motion for summary judgment on behalf of MDOC, Dennehy and Mici (# 30 on the docket) and UCHP's motion for summary judgment (#34 on the docket) are allowed.

_____    /s/ Rya W. Zobel
         DATE                          RYA W. ZOBEL
                                       UNITED STATES DISTRICT JUDGE